■ TRI-MAR CONTRACTORS, INC., Respondent-Appellant, v ITCO DRYWALL, INC., Appellant-Respondent.—In an action to recover damages for breach of contract, the defendant appeals from a judgment of the Supreme Court, Queens County, entered September 11, 1978, which, after a nonjury trial, is in plaintiff's favor. The plaintiff cross-appeals from the same judgment insofar as it limits its recovery to the principal amount of $21,033.95, plus interest, costs and disbursements. Judgment modified, on the law and on the facts, by increasing the principal amount of the recovery to $22,539.34. As so modified, judgment affirmed, without costs or disbursements, and action remitted to Trial Term for entry of an appropriate amended judgment, including interest, costs and disbursements. The plaintiff, Tri-Mar, was general contractor on a project. Tri-Mar entered into an oral agreement with the defendant, ITCO, under which ITCO was to do certain work as a subcontractor. The agreement, which involved a total sum of $229,000 provided for Tri-Mar to make monthly installment payments to ITCO based on monthly requisitions to be submitted to Tri-Mar. Tri-Mar

was to retain 10% of each installment to insure completion of ITCO's performance. By September 11, 1976, although there was still a substantial amount of work to be done under the contract, ITCO had completely abandoned the project. In justification, it argues that the parties originally agreed that payments would be made to ITCO on the tenth of each month following its submission of a requisition; that Tri-Mar was making its payments late; and, by July, 1976, it had begun to make partial payments on installments. Tri-Mar contends, however, that ITCO had accepted payments tendered after the twentieth of the month from the outset and says that it began to cut back on its payments when it determined that the amount still due ITCO on the contract would not cover the cost of the actual amount of work that still had to be done. Tri-Mar asserts that by September 10, 1976, it had paid ITCO the full amount of every requisition submitted to it, less the 10% retainage that it was entitled to keep. Unless ITCO's work stoppage was justified by Tri-Mar's delay in making payments, there can be no doubt that the intentional abandonment of the project before the work was completed constituted a breach of the contract. Section 276 of the Restatement of the Law of Contracts provides, in pertinent part: "RULES FOR DETERMINING MATERIALITY OF DELAY IN PERFORMANCE. In determining the materiality of delay in performance, the following rules are applicable: (a) Unless the nature of a contract is such as to make performance on the exact day agreed upon of vital importance, or the contract in terms provides that it shall be so, failure by a promisor to perform his promise on the day stated in the promise does not discharge the duty of the other party." The point is illustrated in the Restatement by the following example: "5. A contracts to erect a building according to special plans and specifications. B promises to pay therefor in instalments of fixed amounts as the work reaches specified stages. B fails to make a payment at the time promised. A need do no further work until back payment has been received, but unless the payment is delayed an unreasonably long time must resume work when the payment is made." ITCO, which accepted late payments, does not claim that the contract itself provided that time was of the essence. ITCO does say that it made oral complaints to Tri-Mar about the lateness of the payments. Nevertheless, no written request for timely payments was made until August 9, 1976 when, complaining of increased costs, ITCO asked Tri-Mar to make all payments by the tenth of the month and to pay all of the retainage as well. In the letter, ITCO threatened to remove its personnel if Tri-Mar failed to do what it was asked. ITCO may or may not have been entitled to refuse to continue work until it was paid what it was due, but under the circumstances, it was not entitled to abandon the project completely. While it may be that the parties agreed to payment by the tenth of the month and ITCO was entitled to timely payments, absent an express contract provision providing that time is of the essence, if one party acquiesces in the other's late payments throughout the period of the contract, the tardy party is entitled to unequivocal notice that timely payment will be required in the future (see, generally, *Ballen v Potter,* 251 NY 224). Here, ITCO did not make an unequivocal demand for timely payment until August 9, 1976, by which time it had all but abandoned the project leaving a skeleton crew on duty. The August 9 letter is inadequate as an unequivocal demand because it requests both timely payment to which it may have been entitled and payment of the retainage to which ITCO had not yet earned the right. We thus conclude that ITCO breached its contract with Tri-Mar and may be held liable for damages. The plaintiff therefore is entitled to be made whole and should recover the fair market

cost of completing the work abandoned by ITCO (cf. *Bellizzi v Huntley Estates,* 3 NY2d 112, 115). In arriving at its total of $21,033.95, Trial Term relied on canceled checks rather than on plaintiff's payroll records as proof of labor costs. We see no reason to question the payroll records which indicate $46,738.59 as the expense incurred for carpenters' labor. We also disagree with Trial Term's findings concerning the value of the contract and the amount already paid. The court seems to have relied upon the figures appearing in the mechanic's lien filed by ITCO against the project. Those figures relate to the amount actually expended by ITCO and not to the value of the contract. We also find that it was incorrect to use the $28,560.30 claimed in the lien as an offset against the plaintiff's recovery. Having breached the contract, ITCO is not entitled to a *quantum meruit* recovery. ITCO may, however, set off the unpaid balance of what was due to it under the contract against Tri-Mar's recovery (see, generally, Restatement, Contracts, § 346, subd [1], par [a], cl [i] and illustration [1]). In their pleadings, the parties agree that payments of $184,426.70 were made by Tri-Mar to ITCO. We calculate the cost of completing ITCO's unfinished work as follows:

| | |
|---|---|
| $46,738.59 | (carpenters' wages) |
| 9,128.00 | (fringe benefits) |
| 11,155.95 | (Kamco Supply Corp. invoices) |
| 90.10 | (Marino Industries Corp.) |
| $67,112.64 | |

Tri-Mar's total cost, therefore, was $251,539.34, a sum arrived at by adding the $67,112.64 representing the cost of completion to payments previously made to ITCO amounting to $184,426.70. Since Tri-Mar is entitled to recover the difference between the contract price of $229,000 and this total of $251,539.34, the judgment should be modified to the amount of $22,539.34, plus interest, costs and disbursements. Lazer, J. P., Gibbons, Gulotta and Cohalan, JJ., concur.